DPM:cmf 05-295 11-4-05

UNITED STATES DISTRICT COURT
FEDERAL DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DIANE MORRIS and GOEFFREY MORRIS | : | CA 06 52 T |
| | : | |
| VS. | : | C.A. No.: |
| | : | |
| BLUE CROSS & BLUE SHIELD OF RHODE ISLAND, INC. | : | |

# COMPLAINT

***Parties and Jurisdiction***

1. Plaintiff, Diane Morris, (hereinafter "Diane" or "Ms. Morris") is an individual residing at 4 Farnsworth Drive in Lincoln, Rhode Island 02865.
2. Plaintiff, Geoffrey Morris, (hereinafter "Geoffrey" or "Mr. Morris") is an individual residing at 4 Farnsworth Drive in Lincoln, Rhode Island 02865.
3. Defendant, Blue Cross/ Blue Shield of Rhode Island, Inc. (hereinafter "Blue Cross"), is a Rhode Island corporation, organized and existing under the laws of the State of Rhode Island, with a principal place of business in Providence, RI which at all times relevant hereto has been a licensee of the Blue Cross and Blue Shield Association.
4. At all times relevant hereto Geoffrey and Diane were insured pursuant to an insurance contract issued by Blue Cross, and provided to Geoffrey through his employer, Starkweather & Shepley, Inc. (hereinafter "Starkweather"), which provides health insurance to Geoffrey and Diane Morris.
5. The aforementioned contract of insurance hereinafter "Blue Cross contract" was issued as a benefit to Geoffrey by his employer, Starkweather and Shepley.

6. As such, said Blue Cross contract is an employee benefit which is governed by the Employee Retirement Income Security Act. (ERISA) 29 USC § 1001 *et seq*. and, in particular, 29 USC § 1132(a) (I) (B) which provides a private cause of action to clarify rights to benefits under the terms of an ERISA governed benefit plan.

7. This court has personal jurisdiction over this defendant.

8. This Court has subject matter jurisdiction over the issues raised in this complaint, pursuant to 29 USC § 1001 *et seq.*

***Facts and Background***

9. At all times relevant hereto plaintiff, Geoffrey Morris, has been an employee of Starkweather and Shepley.

10. Further, at all times relevant hereto, defendant Blue Cross entered into an agreement with Starkweather and Shepley to provide medical insurance benefits to the employees of Starkweather and Shepley.

11. In its role as provider of medical insurance benefits, Blue Cross is at all times relevant hereto acted as both the underwriter of such benefits as well as the administrator of the health insurance benefit plans it underwrote.

12. In its role as benefits administrator, Blue Cross owes a fiduciary duty to all employees of Strarkweather for whom health insurance benefits are purchased from Blue Cross.

13. Health insurance benefits were purchased on behalf of Geoffrey Morris and have been in effect at all times relevant hereto. Specifically, Geoffrey Morris entered into Health Mate Coast to Coast subscriber agreement which was portrayed by Blue Cross as a legal contract between Mr. Morris and Blue Cross. Such policy of insurance has previously been identified at the Blue Cross contract.

14. Further, the spouse of Geoffrey Morris, Diane Morris, is covered pursuant under the aforementioned Blue Cross contract.

15. Said Blue Cross Contract renews yearly and is currently in full force and effect.

16. The Blue Cross contract covers surgical procedures, including, but not limited to, spinal surgery.

17. Specifically, in § 3.33 of the subscriber agreement is a binding contract between Geoffrey Morris, Diane Morris and Blue Cross, Blue Cross is obligated to reimburse for the costs of operations "to treat disease or injury", so long as certain specified exclusions do not apply.

***The Medical Condition of Diane Morris***

18. Diane Morris was born on May 25, 1952 and has had a long history of low back pain and related problems and has been experiencing such symptoms for over 36 years.

19. On or about September 23, 2004, Ms. Morris came under the care of Dr. Steven Blazar, M.D. a licensed orthopedic surgeon who practices with the Orthopedic Group, Inc. Pawtucket, Rhode Island. She came to see Dr. Blazar to obtain a second opinion relating to the need for spinal surgery.

20. Prior to seeing Dr. Blazar, Ms. Morris had obtained an opinion that she should undergo an anterior lumbar interbody fusion with pedicle screw posterior fixation. This surgery is commonly referred to as "spinal fusion".

21. As a result of her initial visit, Dr. Blazar, diagnosed Ms. Morris with degenerative disc disease of the lumbar spine and recommended non-surgical intervention before she undergo surgery.

22. Subsequently, Ms. Morris came under the regular care of Dr. Blazar. After the failure of conservative measures to control her lumbar pain, Dr. Blazar recommended Charite disc

replacement surgery. It is this recommended surgical procedure which forms the basis of the instant complaint.

23. Dr. Blazar is knowledgeable, trained, competent, and certified to perform Charite disc replacement surgery.

24. The Charite disc replacement surgery recommended by Dr. Blazar would involve removal of a degenerated lumbar spinal disc and substitution of an artificial disc in Ms. Morris' spine.

25. Dr. Blazar believed the disc replacement surgery is necessary for the treatment and care of Diane Morris' lumbar disc disease, and that it is appropriate with regards to the standards of medical practice within the appropriate medical community.

26. Indeed Dr. Blazar has determined that Diane Morris is an ideal candidate for disc replacement surgery.

27. Dr. Blazar, has communicated the details of his recommendations to Blue Cross, has caused his office to provide information relating to the Charite disc replacement surgery to be provided to Blue Cross and has offered to discuss Ms. Morris' medical condition and/or disc replacement surgery with Blue Cross.

***Background Relating to Disc Replacement Surgery***

28. Spinal fusion is known to be an operation which not only can be very painful to the patient after the fact, but also is known to leave patients without full range of motion upon completion of the surgery. Many of patients end up living with more pain and with less range of motion than they had prior to the surgery. Such an operation is fraught with so many risk factors that Dr. Blazar does not recommend this for Diane as a viable option.

29. The disc replacement surgery as recommended by Dr. Blazar offers an alternative to spinal fusion surgery and allows for better recovery and greater range of past surgical movement of the spine not possible with fusion. This spinal disc replacement surgery, a/k/a Charite replacement disc surgery (hereinafter "disc replacement"), was developed in Europe and has been practiced extensively throughout Europe.

30. In October of 2004 the FDA has approved disc replacement for patients in the United States of America.

31. Upon information and belief, Blue Cross & Blue Shield Horizon, which is the New Jersey based Blue Cross & Blue Shield Association Licensee, Empire Blue Cross & Blue Shield which is the New York Licensed, Blue Cross & Blue Shield of Arkansas and Blue Cross & Blue Shield of Montana, which like Blue Cross and Blue Shield of Rhode Island are the licenses of their respective states, already authorize and approve disc replacement surgery for their subscribers.

***Ms. Morris' Request for Disc Replacement Surgery***

32. Ms. Morris, through her doctor, requested permission to have the disc replacement surgery through Blue Cross pursuant to her contract of health insurance with Blue Cross.

33. Specifically, on or about April 21, 2005 Dr. Blazar caused to be sent to Blue Cross written correspondence document the medical necessity of the disc replacement surgery and to request insurance coverage and reimbursement for said procedure. In that correspondence Dr. Blazar pointed out that the Charite artificial disc was given FDA approval on October 26, 2004; that has been implanted in over 8,000 patients in 30 countries outside of the United States; that it has over 17 years of clinical experience and that it had a history of having been implanted in over 900 patients within the United States. Said correspondence pointed out that the Charite artificial disc designed as an

alternative to spine fusion surgery and pointed out the significant limitations to fusion surgery which include: the fact the fusion is permanent and irreversible; that fusion has variable success rates; that fusion causes loss of motion which increases the stress and load on the adjacent segments of the spine immediately above and below the fused segments.

34. Thereafter, on May 10, 2005, Blue Cross issued correspondence to Mrs. Morris denying reimbursement for the disc replacement surgery. As the basis for this denial, Blue Cross stated that "our medical director has determined that this procedure is not considered medically necessary" and that there is "insufficient clinical evidence in published, peer-reviewed medical literature to support a conclusion concerning the health outcome or benefits associated with this procedure". That correspondence was signed by Peter Hollmann, M.D., senior medical director for Blue Cross.

35. Thereafter, on May 13, 2005 Blue Cross caused additional correspondence to be sent to Diane Morris, stating, that the reimbursement for the disc replacement surgery remains denied because Blue Cross considers the "placement of an intervertebral disc to be investigational". Said correspondence went on to state that investigational services are not a covered benefit and will not be reimbursed.

36. Then, on June 8, 2005, Geoffrey Morris directed a letter to Dr. Hollmann, senior medical director of Blue Cross. Mr. Morris pointed out in his letter that Diane had a confirmed disc problem and is documented by two (2) MRI studies and a discogram. He pointed out that spinal fusion surgery would limit his wife's mobility, that the recovery time for disc replacement is far less than recovery time for spinal fusion surgery and that the relative costs of the two (2) surgeries are the same. Mr. Morris continued and stated that he understood that over fifty (50) similar procedures had been performed in Massachusetts

and that at least one (1) procedure was approved in Rhode Island through the state's Workers' Compensation System.

37. Upon information and belief, Blue Cross of Rhode Island, acts as administrator for Beacon Mutual Insurance Company assisting and reviewing and determining medical treatments and procedures in connection with Workers' Compensation Claims. Upon information and belief, while acting as administrator for Beacon, Blue Cross of Rhode Island has approved at least one disc replacement surgery which was paid for by Beacon Mutual.

38. Thereafter, on or about June 14, 2005 Michael D. Feldman, M.D., another doctor employed in Dr. Blazar's practice, wrote to Blue Cross concerning a policy regarding artificial intervertebral disc replacement surgery.

39. In his correspondence to Blue Cross Dr. Feldman stated that "artificial disc replacement surgery is medically necessary in a candidate that has met the medical criteria". He further questioned Blue Cross' indication that such surgery is not "medically necessary" because not enough information is known.

40. Thereafter, on June 20, 2005, Carol Cooney of Dr. Blazar's office on behalf of Diane Morris and requested that Ms. Morris' case be reviewed by spine specialist outside of Blue Cross & Blue Shield of Rhode Island.

41. On June 21, 2005, Blue Cross issued another denial letter herein it stated that "reimbursement for services remains denied because there is insufficient clinical evidence published to support a conclusion concerning the health outcome or benefits associated with this procedure" and that the procedure " is still considered to be investigation/experimental" and therefore not covered.

42. Thereafter, on July 5, 2005, Roslyn Abatiello, R.N., field coordinator for Blue Cross, wrote to Diane Morris to confirm that Blue Cross had received Ms. Morris' Level 3 medical appeal which would be sent to MassPro for review as requested. MassPro is a reviewer approved by Blue Cross to review appeals by insurers such as Ms. Morris.

43. On July 21, 2005, MassPro directed correspondence to Nurse Abatiello wherein it upheld the Blue Cross denial of the surgery.

44. On July 28, 2005, Carol Cooney, Medical Paralegal for the Orthopedic Group, Inc., wrote to Blue Cross and inquired if the reviewer on behalf of Mass Pro, Dr. William Kaden, was an Orthopedic Spine Specialist.

45. Thereafter, on behalf of Ms. Morris, Carol Cooney, Medical Paralegal for the Orthopedic Group Inc., wrote again to Blue Cross such correspondence, Ms. Cooney reiterated the history concerning the review by Dr. William Kaden. She indicated that president of Blue Cross had informed her that Dr. Kaden was in fact an Orthopedic Specialist. Along with the letter of August 17, however, Ms. Cooney provided evidence that Dr. Kaden was in fact an internist, not an Orthopedic Specialist.

46. Thus, Ms. Morris has requested reimbursement for disc replacement surgery from Blue Cross, and when Blue Cross denied her request, she appealed said decision. Ms. Morris' appeal within Blue Cross was denied at all levels. Specifically:

    a. On May 10, 2005, Blue Cross denied Ms. Morris' appeal through the Medical Director of Blue Cross (Level 1 appeal).

    b. On June 21, 2005, Blue Cross again denied the disc replacement requested by Ms. Morris (Level 2 appeal).

    c. On July 25, 2005, Blue Cross denied the appeal again, this time after the file was reviewed by MassPro, an independent healthcare organization (Level 3 appeal).

d. Finally, Blue Cross has denied the disc replacement at the final level of appeal available to Ms. Morris (Level 4 appeal).

47. The doctor assigned to review Mr. Morris' appeal, Dr. Kaden was not qualified to conduct such a review as he was not either an orthopedic specialist or neurosurgeon. Any doctor assigned to review this surgery should be board certified as an orthopedic spine specialist and/or a neurosurgeon, since disc replacement involves both the spine and the spinal column.

48. Diane has exhausted all of her remedies as specified in the contract and, further, has notified Blue Cross of her intention to resort to the Courts for redress.

49. Ms. Morris needs the disc replacement in order to treat her degenerative disc disease condition, alleviate the tremendous pain she now endures, and provide the most positive outcome and range of motion after such a surgery.

**COUNT I**
***Breach of Contract***

50. Now comes plaintiff and hereby repeats and re-alleges paragraphs 1 through 49 as if fully set forth herein.

51. Blue Cross, when acting as plan administrator, is required to act as a fiduciary to its insured when interpreting and administering the contracts.

52. Defendant has breached the contract by improperly interpreting the Blue Cross contract, by failing to act as a reasonable fiduciary relative to Ms. Morris, by placing its own financial concerns ahead of Ms. Morris when evaluating her claim for medical benefits, by failing to properly review her medical file, and by failing to have a qualified board certified orthopedic spine specialist and/or neurosurgeon independently review her appeal and determine whether disc replacement surgery is investigational or otherwise is excluded from coverage under the Blue Cross contract.

WHEREFORE, plaintiffs' Diane and Geoffrey Morris hereby demand a judgment from this Honorable Court ordering defendant, Blue Cross & Blue Shield of Rhode Island, Inc.: to reimburse the costs of the Charite disc replacement surgery sought by Ms. Morris; reimburse Ms. Morris all costs incidental to Blue Cross' Breach of Contract including reasonable attorney's fees, and, order such other relief as this Court deems just under the circumstances.

**COUNT II**
***Bad Faith***

53. Now comes plaintiff and hereby repeats and re-alleges paragraphs 1 through 52 as if fully set forth herein.
54. Defendant has a fiduciary duty to act in good faith toward its insured when evaluating a claim for medical benefits submitted by its insured
55. Defendant breached its fiduciary duty by failing to act in good faith toward Diane Morris when reviewing her claim for medical benefits despite the current research available on the requested surgery.

WHEREFORE, plaintiffs' Diane and Geoffrey Morris hereby demand a judgment from this Honorable Court ordering defendant, Blue Cross & Blue Shield of Rhode Island, Inc.: to reimburse the costs of the Charite disc replacement surgery sought by Ms. Morris; reimburse Ms. Morris all costs incidental to Blue Cross' Breach of Contract including reasonable attorney's fees, and, order such other relief as this Court deems just under the circumstances.

**COUNT III**
***Injunctive Relief***

56. Now comes plaintiff and hereby repeats and re-alleges paragraphs 1 through 55 as if fully set forth herein.

57. Mr. and Mrs. Morris do not have the financial resources available to them to afford the "disc replacement surgery".

58. If Ms. Morris does not receive the surgery in a timely manner, she will experience irreparable harm including continued pain and lack of movement, lack of quality of life. Further, with each week that passes, the likelihood increases that her medical circumstances may change making her ineligible for the disc replacement surgery which she seeks, and which affords her with the best possible chance of living a normal pain free life.

WHEREFORE, plaintiffs' Diane and Geoffrey Morris hereby demand a judgment from this Honorable Court ordering defendant, Blue Cross & Blue Shield of Rhode Island, Inc.: to reimburse the costs of the Charite disc replacement surgery sought by Ms. Morris; reimburse Ms. Morris all costs incidental to Blue Cross' Breach of Contract including reasonable attorney's fees, and, order such other relief as this Court deems just under the circumstances.

THE PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Plaintiff, Diane Morris,
By her Attorneys,

***McKiernan Thompson & Millea***

Daniel P. McKiernan, Esquire (#4705)
243 North Main Street
Providence, RI 02903
(401) 223-1400
(401) 223-1401 (fax)